## THE STATE *vs.* KEAN.

The testimony of a witness, that he was present at the marriage of the respondent, in another state, and that the services were performed by the settled minister of the place, who was in the custom of officiating in such services in other instances, is sufficient evidence of a marriage.

An ordained minister of the gospel, in regular standing with the denomination to which he belongs, is authorized by our present statute to solemnize marriages in any county within the state, after causing the credentials of his ordination to be recorded in the county where the marriage is solemnized.

In an indictment for bigamy, the omission of the words, " with force and arms," will not vitiate the indictment.

Where surnames, with a prefix to them, are ordinarily written with an abbreviation, the names thus written in an indictment are sufficient.

The provision in the constitution, requiring all indictments to terminate with the words, " against the peace and dignity of the state," is sufficiently complied with by an indictment concluding, " against the peace and dignity of our said state."

INDICTMENT for bigamy. A witness on the part of the state testified that the defendant, at Cornish, in the county of York, and state of Maine, on the 12th of November, 1820, was, in presence of the witness, married to Olive McKusic, by one Timothy Remick, a resident in the town of Cornish and state of Maine, and who long before and ever since has officiated as a minister at said Cornish. The witness further testified that said Remick officiated as a clergyman at the marriage of the witness, and that he, the witness, had also been present at several other marriages where the marriage ceremony was performed by said Remick in Cornish, and also that said Olive McKusic is still living.

Elihu Scott testified that he was a Methodist minister, ordained to the office of a deacon, at Portsmouth, and to that of an elder, at Lisbon, N. H., and that he had been stationed, according to the rules of his order, as a minister for two years at Somersworth, in said county of Strafford ; at the expiration of which time he left, and went out of the county, and that while thus there, on the third of April, 1839, at said Somersworth, he married the defendant to Nancy Peckham.

It further appeared, by the testimony of this witness, that said Olive and said Kean, after the marriage, lived together as husband and wife, in Moultonborough, N. H.; then in Newfields, in the county of York; afterwards in some town in the eastern part of Maine, and from thence they removed to Somersworth, N. H., and were living there as husband and wife in December, 1835. Since that time said Olive has resided part of the time in Somersworth, but principally with her connexions in the state of Maine, with whom she was living at the time of the trial, about thirty miles distant from said Somersworth. No other evidence was offered on either side.

The defendant objected that the evidence was insufficient, 1. Because it did not appear that the person who solemnized the marriage in Maine was an ordained minister. 2. Because it did not appear that by law, in Maine, ordained ministers, or any ministers, were authorized to solemnize marriages. 3. Because it did not appear that the person who solemnized the supposed second marriage was authorized so to do by the laws of this state.

These objections were overruled, and the court instructed the jury that the evidence, if believed, was sufficient to maintain the indictment. The jury found the defendant guilty, and the defendant excepted to the ruling and instructions of the court, and moved for a new trial; and also moved the court in arrest of judgment, for the following defects in the indictment, viz.:

1. That the offence is not therein alleged to have been committed " with force and arms." 2. That the indictment is not drawn in words at length, but contains abbreviations or characters for, or instead of words. 3. That it does not conclude, as required by the constitution, " against the peace and dignity of the state."

*Woodman*, solicitor, for the state, cited as to sufficiency of the evidence of marriage, *Elizabeth Sears' case*, 2 *City*

*Hall Record.* 3 ; 7 *Johns.* 314, *People* vs. *Humphries ;* 2 *N. H. Rep.* 276, *Londonderry* vs. *Chester ;* and, that it is sufficient that the minister officiates habitually as an officer duly empowered to solemnize marriages, to render such marriage legal, 4 *D. & E.* 366, *Berryman* vs. *Wise ;* 2 *N. H. Rep.* 202, *Johnson* vs. *Wilson ;* 1 *N. H. Rep.* 266, *Jones* vs. *Gibson ;* 7 *N. H. Rep.* 113, *Tucker* vs. *Aiken ;* 6 *Greenl. R.* 148, *Damon's case ;* 13 *Petersdorf's Ab.* 453, *note.*

As to the exceptions taken in arrest of judgment, he cited 2 *Hawk. P. C. ch.* 25, § 90 ; 2 *Hale's P. C.* 189 ; 11 *Mass. R.* 279, *Commonwealth* vs. *Stockbridge.*

*Christie,* for the respondent.

Upham, J. The evidence offered to show the first marriage of the respondent was by a witness who was present at the time of the marriage, and who testified that it was solemnized at Cornish, in the state of Maine, and that the settled minister of Cornish officiated in the services on that occasion. The witness testified that the same clergyman officiated in the marriage services of the witness, and that he had also been present at several other marriages at Cornish, when the marriage ceremony was performed by him. There was farther evidence showing a cohabitation of some years subsequent to this marriage.

In many cases, long continued cohabitation as husband and wife is *prima facie* evidence of marriage. 9 *Mass. R.* 414, *Newburyport* vs. *Boothbay ;* 7 *Johns.* 314, *People* vs. *Humphrey ;* 18 *Johns. R.* 346, *Van Buskirk* vs. *Claw.* A copy of the record of the certificate, however, of the person by whom the ceremony is performed, is the evidence which is most ordinarily offered of a marriage. But this evidence is in no case indispensable. In *Commonwealth* vs. *Littlejohn,* 15 *Mass. R.* 163, which was an indictment for lascivious cohabitation, it was holden that the marriage of one of the parties might be proved either by the record of the minister

or magistrate who solemnized the marriage, or by the testimony of witnesses who were present ; and in *Commonwealth* vs. *Norcross*, 9 *Mass. R.* 492, which was an indictment for adultery, it was remarked by the court that the testimony of witnesses who were present at the solemnization of the marriage is more satisfactory than a copy of the record, and is, moreover, necessary to prove the identity of the party.

In the case before us, the marriage was in another government, and the rule as settled in England in such cases is that the marriage may be proved by any person who was present at the ceremony, provided that such circumstances are also proved from which the jury may presume that it was a valid marriage according to the laws of the country in which it was celebrated. Proof that the ceremony was performed by a person appearing and officiating as a priest, and that it was understood by the parties to be the marriage ceremony, according to the rites and custom of the foreign country where they were residing at the time, is presumptive evidence of marriage. 10 *East* 282, *Rex* vs. *Brampton ;* 2 *Stark. Ev.* 938.

Under these authorities the evidence of the marriage offered in this case is clearly sufficient.

The objection to the evidence showing a second marriage is, that it does not appear that it was solemnized by any person authorized to do so by the laws of this state. This exception is founded on the statute of 1791, (1 *Laws N. H.* 172) which provided that every ordained minister of the gospel, in the county where he is settled, or hath his permanent residence, and in no other place, is empowered to solemnize marriages ; but this restriction is withdrawn by the act of December 12, 1832. By that act, every regular ordained minister of the gospel, residing in this state, and in regular standing with the denomination to which he belongs, is authorized and empowered to solemnize marriages in any county within the state, after having caused the credentials of his ordination to be recorded in the office of the clerk of

the court of common pleas, in the county where he shall solemnize any marriage as aforesaid.

The obligation of causing such record to be made is directory upon the minister, and may be presumed to be complied with, until the contrary is shown. The case is silent upon that point. As the facts now appear, the exception cannot prevail. There was a marriage in fact, and that is sufficient.

Motion is also made in arrest of judgment, for the reasons that the offence is not alleged in the indictment to have been committed with force and arms; that the indictment contains characters and abbreviations instead of words; and that it does not conclude, as required by the constitution, " against the peace and dignity of the state."

Courts hold to a high degree of strictness in pleadings in criminal cases; but this strictness has been much relaxed from the earlier decisions. It is very questionable, however, whether under any former decisions the exceptions here taken would prevail. Hawkins says, in his Pleas of the Crown, that the words, *vi et armis*, are necessary in indictments for offences which amount to an actual disturbance of the peace, as nuisances, assaults, &c., but that they were never necessary where it would be absurd to use them, as in indictments for conspiracies, slanders, cheats, escapes, and such like. 2 *Haw. P. C. ch.* 25, § 90.

The abbreviation complained of in the indictment is the writing of the original name of the former wife, as McKusic; but this has become the more ordinary spelling, or at least writing of names with such a prefix, and custom must govern in this respect.

The indictment concludes, " against the peace and dignity of our said state," instead of, " the peace and dignity of the state," as required by the constitution. It is unnecessary for us to determine here how far a departure from the precise words required by the constitution would be admissible in indictments. We are satisfied, however, that a departure to this extent from the words, " the state," to " our said state"—

The State *v.* Kean.

is not such a variance from the provision of the constitution, and from a strict and rigid compliance with the same, as to vitiate an indictment.

*Judgment against the respondent.*