## PETTINGILL *vs.* MCGREGOR & UX.

A. commenced an action of assumpsit against B. and C., alleging a promise on the part of B. to marry the plaintiff on the 20th day of June, 1840, and a refusal to fulfil that promise, and an intermarriage between B. and C. on the 22d day of June, 1840. For the purpose of showing the fact of the marriage of B. and C., the plaintiff proved that he had been attentive to B. for two or three years, and that B. made preparation for marriage with the plaintiff on June

Pettingill *v.* McGregor.

21st, 1840, and that on the night or evening of the 19th day of said June, B. left her father's house, and on the 28th day of the same June B. and C. returned together to H., and on that day attended the church together where B.'s friends worshipped. That a few days after their return, B. resided with F., who was a sister of C., and afterwards with S., in the vicinity of B.'s parents. While B. was boarding with S., C. usually attended B. to church on the Sabbath day, and sat with her, and dined with her on that day, and in several instances was seen leaving S.'s at a very early hour, after having spent the evening with B. A sister of B., whose deposition was offered in evidence in the case, spoke of B. as the wife of C.—B., also, being enquired of, at the place where she resided, by the officer who served the writ in this action, where her husband C. was, replied, that he was employed on the rail road, and he was shown to have been so employed—*Held*, that the foregoing facts furnished competent and sufficient evidence to be submitted to the jury, from which they might infer a marriage between B. and C.

Where a writ is not properly indorsed before service, the court have no authority to permit the same to be subsequently indorsed, without the assent of the defendant. *But see 48 R. 494-5.*

But where a writ is properly indorsed before service, it is the uniform practice in this state, and the court are fully authorized to permit, any such change of indorsers as in their judgment the exigency of the case or as justice may seem to require.

Where a plaintiff resides within this state, and employs an attorney in his behalf to commence an action for him, such attorney is fully authorized by the employment to place the name of the plaintiff upon the writ as indorser, and to bind him as such.

Accordingly, in such case, if the indorsement be thus : " A., plaintiff, by his attorney B.," in this state the plaintiff is regarded as the indorser, and the attorney is not personally bound.

Where a plaintiff resides out of this state, he is not authorized by the statute to indorse his own writ ; neither is his attorney authorized, by reason of his employment, to place his name upon a writ as indorser.

Where a plaintiff resided out of the state, and his attorneys, who resided within this state, before the service of the writ, indorsed it, thus : " A. B., plaintiff, by his attorneys, C. & D.," it was *held*, that the attorneys, having no authority to bind the plaintiff, bound themselves as indorsers, and that the writ was therefore properly and sufficiently indorsed—*Held*, also, that the court in that case were authorized to allow a new indorser to be furnished instead of those who originally indorsed the writ.

Assumpsit. The action was commenced on June 22, 1840.

The plaintiff, in his first count, declared upon a promise of the defendant Emily, alleged to have been made May 1, 1840, to marry the plaintiff on the 20th day of June, then

next, and a refusal of Emily to perform that promise, and alleged an intermarriage of the defendants on June 22, 1840.

In the second count, the plaintiff also declared upon a promise of Emily to marry him, and alleged that he had remained unmarried, &c., and that Emily had refused to perform her promise, but had intermarried with the other defendant, McGregor.

Upon the trial, which was had upon the general issue, the plaintiff offered evidence tending to show a promise of said Emily, as set forth in the declaration.

For the purpose of proving the marriage of the defendants, the plaintiff offered the following evidence, viz: Said Pettingill had for two or three years been attentive to Emily, and Emily had made preparations for her marriage (as the witnesses supposed) to the plaintiff, in June, 1840, by preparing dresses and furniture, and having certificates of the publication of bans, and she invited a sister of her's to her wedding, which was to have taken place on the 21st day of June, 1840. On the evening or night of the 19th day of said June, the defendant, Emily, left her father's house, and on the 28th day of said June, Emily, and McGregor, the other defendant, returned together to Hampton Falls, and on that day attended church together at the church where her friends worshipped. A few days after their return, Emily resided with a Mrs. Fife, who was a sister of the defendant, John McGregor, and afterwards with a Mrs. Sanborn, in the vicinity of her parents. While she was boarding at Mrs. Sanborn's, said John usually attended her to church on the Sabbath day, and sat with her, and dined with her on that day; and he was in several instances seen leaving said Sanborn's at a very early hour, after having spent the evening with Emily. A sister of Emily spoke of her as the wife of John McGregor, although she said that neither of the defendants had informed her that they were married. And the officer who made service of the writ testified that he called at a house where Emily lived, and en-

Pettingill *v.* McGregor.

quired for her husband, and was informed by her that he was at work on the rail-road; and it was proved that said McGregor was employed upon said rail-road as a contractor.

It was objected by the defendant, that the foregoing evidence offered by the plaintiff was not competent to be submitted to the jury, to sustain the allegation of the marriage, and it was so ruled by the court; and a verdict was thereupon returned for the defendant, and the plaintiff moved to set the same aside, for alleged misdirection of the court in the matter aforesaid.

At the commencement of the trial, the defendant's counsel moved the court to quash the writ for matter apparent upon the record, and called the attention of the court to the fact that the plaintiff was described as " of Salisbury, in the county of Essex and state of Massachusetts," and that the writ was indorsed as follows, viz., " Joseph M. Pettingill, by his attorneys, Bell & Tuck."

On motion of the plaintiff's counsel, the court ruled that the plaintiff should be allowed to furnish an indorser. To that ruling the defendant's counsel excepted. The case was thereupon transferred to this court, for their decision of the several questions arising upon the foregoing case.

*Bell & Tuck*, for the plaintiff. The purpose of proving the marriage was, to show that there was no misjoinder of the defendants, and not to show a breach of the contract. It was offered and relied upon for that purpose only.

The record described the defendants as husband and wife, and the existence of that relation was not denied upon the record. It was therefore admitted, and was not open to controversy upon the general issue, which was the plea pleaded in this case. Even without the evidence offered and rejected by the court, the action was well maintained, and the plaintiff entitled to a verdict.

But at all events, the facts offered to be proved sufficiently showed cohabitation of the parties, and reputation of mar-

riage, and that was sufficient and competent evidence of the fact of marriage, in this case. *Cayford's Case*, 7 *Greenl. R.* 57 ; *Commonwealth* vs. *Littlejohn & a.*, 15 *Mass. R.* 163 ; *Roscoe's Crim. Ev.* 239 ; 2 *Stark. Ev.* 653 ; *Morris* vs. *Miller*, 4 *Burrow's R.* 2057 ; *East's P. C.* 470 ; 2 *Stark. Ev.* 1105, 6–8 ; *Doe* vs. *Fleming*, 4 *Bing.* 266.

*Hackett*, for the defendants. The writ was not indorsed according to the provisions of the statute requiring original writs, where the plaintiff resides out of the state, to be indorsed by some responsible person resident within this state.

In this case, the plaintiff, at the time of commencing his action, resided in Massachusetts, and is set up in the writ as being a resident of that state. The writ was indorsed thus : " John M. Pettingill, by his attorneys, Bell & Tuck."

Now this is to be regarded as the indorsement of the plaintiff. It certainly was not the indorsement of Bell & Tuck ; and no personal obligation was intended to have been assumed by them, nor was any in fact imposed by it upon them.

But Pettingill could not himself be an indorser, such as the statute requires. His residence out of the state disqualified him to become an indorser at all. The writ, then, is to be regarded as not having been indorsed at all before its service.

The motion to quash the writ, for want of a sufficient legal indorser, should have prevailed in the court below.

The evidence offered to prove the marriage was clearly insufficient.

The reply of Emily to the enquiry made of her by the officer who served the writ, was the only material evidence offered, and that was certainly insufficient evidence alone from which to infer a marriage.

The verdict returned in this case is right, and must be sustained, unless the evidence offered went directly to prove acts inconsistent with the honor of the defendant Emily.

*Bell & Tuck,* in reply.   The motion to quash the writ came too late.

The evidence offered in relation to the marriage, proved either marriage or seduction ; and the acts relied upon having taken place in the presence of friends, are inconsistent with any other reasonable supposition than that of marriage. The question is as to the tendency of the evidence, and not as to its weight.

WOODS, J.   The first question presented by this case is, whether the evidence offered by the plaintiff, for the purpose of proving the marriage of the defendants, was competent for that purpose, or had any legal tendency to prove that fact ?

In all civil actions, except for criminal conversation, cohabitation, or reputation, is sufficient evidence of marriage. 2 *Starkie's Ev.* 939 ; 2 *Phill. Ev.* 207, (2d Ed. ;) *Birt* vs. *Barlow, Doug.* 170 ; *Greenl. Ev.* 119.   Did the facts offered in evidence by the plaintiff tend to prove the fact of the cohabitation of the defendants as man and wife, or did the facts, offered to be proved, furnish evidence of a reputation of that relation ?   If so, it was clearly competent for the purpose of proving the marriage.

It appears that prior to, and until the evening or night of, June 19, 1840, the defendant, Emily, resided with her father, and on that evening, or night, she left her father's house, and on Sunday, the 28th day of said June, the said Emily and the other defendant, McGregor, returned together to Hampton Falls, and on that day attended together the church where her friends worshipped—that a few days after their return, Emily resided with a Mrs. Fife, who was the sister of the defendant, John McGregor, and afterwards with a Mrs. Sanborn, in the vicinity of her parents—that while she was boarding at said Sanborn's said John usually attended her to church on the Sabbath day, and sat with her, and dined with her upon that day, and that he was in several instances seen leaving said Sanborn's at a very early hour, after having spent the evening with Emily.

The court are of opinion that these facts so far tended to prove the fact of the cohabitation of the parties and reputation of the relation of man and wife, as to have entitled the plaintiff to submit the same to the consideration of the jury, as evidence of the fact of marriage. The evidence offered was evidence of facts from which the marriage might have been inferred. The fact that she left her father's house, and went and resided with a sister of the defendant, John McGregor, in the immediate neighborhood of the father's residence; was conducted there by McGregor, and soon after was boarding at the house of Mrs. Sanborn, also in the immediate neighborhood of her father's family; the fact that McGregor, while Emily was boarding with Mrs. Sanborn, usually attended her to church, and sat with her, and dined with her upon the Sabbath day, and in several instances spent the evening and the night with Emily at the house at which she boarded; and that on the same day after her return with him to Hampton-Falls he attended church with her; that his attentions to her were of the most open and unreserved character, in the presence and in the dwellings of friends, without complaint on their part; that she was spoken of as the wife of McGregor by her sister, who would be likely to know the character of the familiarity existing between the defendants; and that when inquired of by the officer who served the writ where her husband, the said McGregor, was, the defendant, Emily, replied that he was employed on the rail-road—tend to prove the cohabitation of the defendants and the character of that cohabitation, as well as the manner in which the relation subsisting between them must have been regarded by their friends and the public.

The familiarity that existed, and its character, must have been known, not only to his, but also to her friends, and was, without complaint, tolerated by all; and so far as the character of the relation existing between the parties was shown to have been spoken of at all, which was by Emily and her

sister, the relation of husband and wife was admitted and recognized.

The point of view in which the parties are regarded by their relations, and the manner in which they are received and treated and spoken of by them, are proper matters to be submitted to a jury upon the question under consideration. *Greenl. Ev.* 119, § 107. In 2 *Phillips' Ev.* 286, it is said, that, even in a case in which it is proved that the marriage was originally void for want of license, or the regular publication of bans, "there may be sufficient ground for proving a subsequent legal marriage, from the cohabitation of the parties as man and wife, and from the manner in which they were always received by their relations. Whether such presumption is reasonable, the jury are to determine, upon all the various circumstances of the case."

In the case of *Wilkinson* vs. *Payne*, 4 *T. R.* 468, in which a question arose respecting the marriage of the plaintiff, and it clearly appeared that the marriage when it took place was not a legal and valid marriage, Grose, J., who tried the cause, left it to the jury to presume a subsequent legal marriage, from the fact that the plaintiff and his wife had always been received and treated by the defendant, and by all his family, to the time of her death, as man and wife; and the jury having found the existence of a legal marriage, upon exceptions taken the verdict was sustained by the unanimous opinion of the court of king's bench. The court in that case held, that there was some ground for a presumption of a subsequent legal marriage. Lord Kenyon, C. J., remarked, in pronouncing the judgment of the court, "Though the first marriage was defective, a subsequent one might have taken place. The parties cohabited together for a length of time, and were treated by the defendant himself as man and wife. These circumstances afforded a ground on which the jury presumed a subsequent marriage."

We deem the evidence slight; but, upon mature consideration, are clearly of the opinion that it has some tendency,

Pettingill *v.* McGregor.

and so is legally competent to prove the fact of marriage. A criminal intimacy is not to be inferred from the facts proved, when they are at least equally, if not more, consistent with the supposition of the lawful and innocent intercourse of the defendants. In fact, it is not suggested by the counsel for the defendants that the intimacy was other than lawful, but only that the intimacy and attentions proved, did not evidence marriage. In *Doe* vs. *Fleming*, 4 *Bing.* 266, Park, J., said, " the general rule is, that reputation is sufficient evidence of marriage." Best, C. J., said: " The rule has never been doubted. It appeared on the trial that the mother of the lessor of the plaintiff was received into society as a respectable woman, and under such circumstances improper conduct ought not to be presumed."

The court are of the opinion, therefore, that the evidence offered by the plaintiff should have been submitted to the jury, and that the ruling of the court rejecting the same was erroneous.

But another question arises upon this case, involving the power of the court below to permit the plaintiff, under the circumstances disclosed by the case, to furnish an indorser of the writ after the service thereof, and after the entry of the action in the court, at the time of the trial of the action. By the laws of this state, original writs are required to be indorsed by some responsible person resident within this state, in case the plaintiff is not an inhabitant of this state, and the indorsement to be made upon the writ before its service. And in case the plaintiff is a resident within the state, then the writ is required to be indorsed before its service, by the plaintiff or his attorney. 1 *N. H. Laws* 91.

It is believed to have been long the well settled and uniform practice in this state, in all cases where writs were properly indorsed at the time of service, for the court to exercise the power of permitting such changes of the indorsers, as the exigencies of the case, or as justice might seem to require— the court taking care at all times to see that no prejudice

should result to either party from the change thus permitted. This has been done, as well upon the application of defendants as of plaintiffs.

In *Whitcher* vs. *Whitcher*, 10 *N. H. Rep.* 440, in discussing the question of the proper form of the copy of the writ to be filed as a substitute for a lost writ, Parker, C. J., remarks that "the new writ to be filed is no more than a copy of the old one. There may be a new indorser, for it is competent for the court to give leave to change the indorsement, and to require a new one." "The indorser of a writ is no more discharged by the loss of it, than the maker of a note is discharged by its loss." Here, then, as I understand it, is a clear recognition of the rule of law before stated. The foundation of the opinion in this respect is not stated; but it must have been, as I suppose, the practice which was recognized by the chief justice, as amounting to a rule of law. In that case the writ is assumed to have been properly indorsed originally, and the power of the court to give leave to change such indorsement is distinctly recognized and asserted.

In the case of *Farnum* vs. *Bell*, 3 *N. H. Rep.* 72, Chief Justice Richardson remarks : "We are aware that, by our practice, permission is frequently given to indorse a writ after the action is entered; and we entertain no doubt of the validity of such an indorsement, for no court would in such a case permit the indorser to show that the writ was indorsed after it had been served, for the purpose of avoiding his contract." Here, too, is recognized the power as well as the practice of the court to allow new indorsements of writs, after service, and even after entry in court. The remarks of the chief justice probably had reference only to the case where the writ was originally properly indorsed, and to the well established and familiar rule of practice in such cases, and were not intended to go beyond that case. The language is, however, broad enough to reach and embrace also the case of a writ not indorsed at all before service, but does not necessarily go to that extent. This case of Farnum *vs.*

Bell was *scire facias* against bail ; and the defendant demurred, and assigned as a cause, that it was not alleged in the writ of *scire facias* that the name of the defendant was indorsed upon the original writ before it was served, and the demurrer was sustained. And the remarks quoted followed the opinion stating that result in regard to the demurrer. It is not necessary, as I have said, that the language of the judge should be considered as going beyond the case of a writ originally well indorsed ; for even in that case the new indorsement which is allowed is after the service and entry in court ; and if not obligatory when made, it clearly should not be allowed.

If this question were now presented for the first time, or if it might be treated as an open question, whether the court have the power to order the discharge of the liability of the original indorser, and to permit another to be substituted in his stead ; certain it is, that reasons of weight would not be wanting to be urged against the exercise of any such authority, without the assent of the party to whom and for whose benefit the obligation of indorser is assumed. It is the duty of courts of justice ordinarily to enforce, rather than to destroy the obligation of contracts. But however that may be, the usage which exists had its foundation in a desire and purpose to promote the ends of justice. It often happened that the indorser of the writ, who had no other interest than what arose from the indorsement itself, was a material witness in the cause ; and through inadvertence and ignorance of the effect of the indorsement in creating an interest in himself in the result of the action, and thus rendering him an incompetent witness, his testimony was forever lost to the party calling him, if he must remain still the indorser of the writ. To relieve from embarrassments of this sort, the practice was resorted to, to permit a change of indorsers, the court always having a careful regard to the entire responsibility of the substituted indorser. No prejudice is known to have resulted to any one from this rule of practice, but great good

must in many cases have been the consequence of it; and from that consideration, and its long and uniform application in practice, it must now be regarded as among the well settled rules of law in this state, which we are not disposed to disturb. And this practice thus established tolerates no disregard of the express provisions of the statute, as would a practice of allowing plaintiffs to indorse writs that are not indorsed before service. It relieves the plaintiff from no burthens imposed, or prerequisites required, by law to the right to require the defendant to come into court and answer to the action.

We are not aware that the practice has gone to the extent, and it is not believed that the court possesses the power, where the writ is not indorsed at the time of its service, to permit a plaintiff to cause the writ to be indorsed at any subsequent period, without the assent of the defendant. The plaintiff in such action is not properly in court at all. The indorsement of the writ is as much a prerequisite to the right to call upon the defendant to answer to the action, as is the proper service and notice of the pendency of the action. The writ is not in fact properly in court, in contemplation of law. There is good reason why the indorsement should be made, and that it should be done before the defendant is compelled to answer to the merits of the action. The time of the indorsement is material. It is made so by the statute. A defect of the character under consideration is good ground of plea in abatement, or, upon motion, to quash. To permit any such indorsement of a writ, after service, not before indorsed, and the plaintiff thereupon to stand well in court, as though his writ had been originally well indorsed, would be a virtual repeal of the provisions of the statute requiring such indorsement to be made before the service of the writ, or at least would render the same wholly nugatory and inoperative. No precedent for it is found in our Reports, or known to us in practice; and we think any such exercise of power in the court would be wholly unwarranted.

The question, then, for consideration is, Was the writ in this case indorsed in such manner as the statute requires? If it was, then the power was properly exercised in the court below, permitting a new indorsement, or a change in the indorsement of the writ after its service. If it was not thus properly indorsed, then the court had no such power as was exercised in the case.

We think the writ was properly indorsed at the time of its service, and that the fact appeared upon the writ itself. The language of the indorsement as written upon the writ was: " John M. Pettingill, by his attorneys Bell & Tuck." The plaintiff was not an inhabitant of this state, and that appeared in the writ itself. He therefore could not have been a proper indorser, such as the statute requires. It is apparent, then, that if he could not be the indorser, Bell & Tuck could have no implied authority to place his name upon the writ, and bind him as such; and this want of authority in Bell & Tuck was apparent upon the writ itself.

Bell & Tuck, then, did not bind the plaintiff as indorser, for the law recognizes no such person as indorser. Did they bind themselves as indorsers? We think they did. There is nothing in the manner of the indorsement, or in its substance, inconsistent with their personal obligation; and if it was their intention to bind the plaintiff, failing to do it they bound themselves.

It is a well settled rule of law, that when one, not having authority, assumes to bind another, he binds himself, if apt words are used for that purpose, or if the language used in the contract does not preclude the idea of personal obligation on the part of him assuming to be the agent. If a contract entered into by one assuming to act as the agent of another, but who had not the requisite authority, when stript of what the agent had no right to put there, still contains apt words to charge the agent with a personal obligation, he is bound to the performance of the contract. *Woodes* vs. *Dennett,* 9 *N. H. Rep. 55, and the authorities there cited.*

In the present case, the language used, to wit: "Joseph M. Pettingill, by his attorneys," was placed upon the writ improperly, and that fact appearing upon the face of the writ, it is not to be regarded as being there at all. The indorsement is to be stripped of what appears to be improperly there, and its sufficiency to bind the assumed agents is to be judged of by what may still remain thereon. All, therefore, that is to be regarded as upon the writ, for the indorsement thereof, is the name of the firm of Bell & Tuck.

What the contract is, that is implied by law as being entered into by indorsing a writ, when drawn out at large, it is not necessary now to determine; but it is conceived that when drawn out its language would apply as appropriately to the name of the firm of Bell & Tuck as to that of John M. Pettingill, and would as aptly charge them with the obligation of indorsers of the writ. Bell & Tuck were, then, indorsers, and bound as such. The writ, then, was properly indorsed, and there was no foundation for the motion to quash the writ.

We are aware that it was remarked by the late chief justice Richardson, in delivering the judgment of the court in *Miner* vs. *Smith*, 6 *N. H. Rep.* 219, that a writ indorsed like this under consideration, in a case where the plaintiff lives out of the state, and where the statute requires a responsible person who is an inhabitant of the state, " is considered as having no such indorser as the statute requires." But that is to be regarded as a mere dictum. It was not a point necessary to the decision of that case, nor can it therefore be regarded as furnishing any reason or foundation for the decision that was made in that case. The point decided in that case was, that when an attorney is employed to commence an action in the name of an individual, he is authorized to place the name of such individual upon the writ as indorser; and when the plaintiff in such case is an inhabitant of this state, and the indorsement is made in the manner adopted in this case, it is always considered as the indorse-

ment of the plaintiff, and not of the attorney. The decision in that case was undoubtedly correct. No doubt the attorney of a party is, by implication of law, from the employment itself, clothed with all the authority necessary to carry out the purposes of his engagement. And in a case in which the party could properly, and in conformity with the provisions of law, bind himself, and it is necessary, for the purposes of the action, that an obligation should be entered into, connected with the suit, and as a part of it, in its regular course, such obligation, when entered into by the attorney in behalf of his client, and the language of the obligation plainly manifests an intention to bind the client, the client is bound, and not the attorney. In such case, the client being bound, and it being the intention that he should be bound, there would seem to be no reason for holding the attorney bound, against the intention of all parties.

But that is not the case under consideration. In this case the party had no lawful authority to indorse the writ himself. If his name had been placed upon the writ by himself, the writ would not be regarded as indorsed at all, and his attorneys could have no better or higher authority than the party himself. Indeed, in such case the writ could not be regarded as indorsed at all in conformity with the requirements of the statute, if it is to be considered as indorsed by the plaintiff only.

But it does not necessarily follow, that because the plaintiff may not be regarded as a lawful indorser, that the attorney who placed his name there, and who may even have intended to bind him, but failed to do it, has not bound himself. We believe that no sound reason exists why the rules of law applicable to other cases of assumed agency, are not equally applicable to that of an attorney assumed and exercised, but not possessed, in behalf of his client. An attorney at law is but an agent, and we are certainly unable to discover any good reason for holding that when he shall be found assuming obligations in behalf of his client which he is not author-

ized to enter into in his behalf, he is not to be regarded as binding himself like other agents. In such case, as we have seen, if apt words are used for imposing personal obligation upon the agent, he is himself bound, if he fails or has not the proper authority to bind his principal, whatever may have been his intention.

The court below, therefore, acted within the scope of their legal authority in permitting the indorser to be changed, and the ruling on that subject was correct.

The verdict, however, must be set aside for error in the ruling of the court in the rejection of the evidence offered to prove the fact of marriage, and the action transferred to the court of common pleas for a

*New trial.*