# MERRIMACK.

## DECEMBER TERM, A. D. 1848.

## DUNBARTON *v.* FRANKLIN.

Cohabitation between parties and an acknowledgment that they are man and wife, and a general reputation that they are such, do not of themselves constitute a marriage, but are merely evidence from which the jury may find that the parties were married.

So if parties enter into a contract of marriage between themselves and live together in accordance with it, such facts do not constitute a marriage, but are evidence for the consideration of the jury, from which they may find that the parties were married.

ASSUMPSIT for supplies furnished to one Rebecca Sawyer, a pauper, alleged to have her settlement in Franklin, by virtue of her marriage with one Edmund Sawyer, who, it was admitted, had his settlement in Franklin.

The defendant resisted the claim, on the ground that the pauper had never been married to Edmund Sawyer, and was not his wife, and whether the parties were ever married was the only question in controversy.

It appeared on the trial that Sawyer and the pauper lived together in Franklin as husband and wife for about fourteen years, at the expiration of which time, about eight years ago, Sawyer died. Before they began to live together, they went before a magistrate and desired to be married, but not having a certificate of publication, the magistrate declined to perform the ceremony. There was no evidence to show

that the marriage was ever solemnized, either by a magistrate or a minister of the gospel, or in any other way.

Evidence was introduced tending to prove that they lived together as husband and wife, and were generally reputed to be married, and there was also evidence tending to prove that such was not the fact. There was also evidence that they entered into a contract of marriage between themselves, and lived together in accordance with that contract. The court instructed the jury that if they believed that Sawyer and the pauper, during the time that they lived together in Franklin, cohabited and acknowledged each other as man and wife, and were generally reputed to be married, or if they believed that the parties entered into a contract of marriage between themselves, and lived together in accordance with that contract, in either case they should return a verdict for the plaintiff.

The jury returned a verdict for the plaintiff, and also stated, in answer to interrogatories, that they found for the plaintiff upon each of these two points. The defendant moved to set aside the verdict, on account of the instructions of the court.

*Pike*, for the defendant.

The facts stated do not constitute a legal marriage.

Marriage is a civil contract, and requires for its validity three conditions to be performed.

1. The parties must be willing to contract.

2. They must have the ability to make the contract.

3. There must be an actual contract, according to the forms required by law. 1 Black. Com. 433.

Perhaps a mutual agreement would be sufficient, if the laws had prescribed no regulations for the celebration of marriages. This, in a moral view, would be a good marriage, and would impugn no law of the State. *Milford* v. *Worcester*, 7 Mass. Rep. 55. But when laws are made, upon whatever subject, it is the duty of the citizen to con-

form to them, and our statute has provided certain forms, for the purpose of giving validity to the contract of marriage. The act of February 15, 1791, (N. H. Laws 350, ed. of 1815,) provides that ministers of the gospel and justices of the peace may solemnize marriages, and no other persons are clothed with this authority. The statute does not authorize persons to solemnize their own marriages, and the implied prohibition against their so doing is very strong. If such a marriage as the one in question is valid, the statute never need be regarded at all. It is entirely inoperative. The case of *Londonderry* v. *Chester*, 2 N. H. Rep. 268, does not by any means show that such a transaction as the present amounts to a legal marriage. The question there was, whether the minister before whom the marriage was solemnized was còmpetent to perform that duty. In that case, a clergyman was ordained in the Presbyterian form, and was settled over the First Parish in Londonderry. In the year 1804 he fell under censure, and was dismissed by the parish, and was by the Presbytery " enjoined to desist " from preaching. In the year 1805 the injunction was removed, and the clergyman afterwards resided in Londonderry, and performed clerical duties in that and the adjoining towns, but was not again settled over any particular society. The simple question was, whether he was an ordained minister, qualified to solemnize marriages, within the meaning of the act of February, 1791, and the case differs from the present in this important particular, that the parties went before a minister, who assumed to have authority to perform the ceremony of marriage, and a distinction is made by *Woodbury*, J., between neglect of form merely and neglect of substance.

Perhaps the plaintiff will attempt to rely upon the provision in section 11 of chapter 149 of the Revised Statutes, that any persons cohabiting and acknowledging each other as husband and wife, and generally reputed to be such for the period of three years, and until the decease of one of

them, shall be deemed, after such decease, to have been legally married. The Revised Statutes did not take effect until the 1st of March, 1843, and Sawyer, the alleged husband, died before that time. The agreement between him and the pauper was made while the act of 1791 was in force. The Revised Statutes cannot have a retrospective effect. Bill of Rights, art. 23. According to the plaintiff's view, the act may look back on past events, and determine rights which were all settled before the passage of the act.

*Minot*, for the plaintiff.

The cause of action accrued within two or three years, and since the passage of the act. This is not denied. The revised statute is nothing more than declaratory of the common law. It only prescribes what shall be evidence. It does not say that a former invalid marriage shall be valid, although the evidence may apply to acts done before that time. All the rights of the parties accrued since the passage of the Revised Statutes.

The instruction of the court, on the second point, is entirely correct. *Londonderry* v. *Chester*, 2 N. H. Rep. 268. Marriage is only a civil contract. It is no where declared to be void, although the requisitions of the statute may not be complied with. In the case of *The State* v. *Kean*, 10 N. H. Rep. 357, the point arose incidentally. It was there held that the obligation upon the clergyman to cause the credentials of his ordination to be recorded in the office of the clerk of the court of common pleas, was directory only, and if there was a marriage in fact, that was sufficient. In the present case, there was a marriage in fact, and the contract is not invalidated by an omission to comply with the prescribed forms.

*Pike*, in reply.

If we consider this case to be governed by the provisions of the Revised Statutes, then it cannot be denied that a

new rule is provided for the decision of this case, because the statute makes certain facts evidence of a marriage, which, before its passage, were not evidence. It makes that a marriage which previously was not a marriage.

In the case of *The Society, &c.* v. *Wheeler,* 2 Gall. 105, it was held that the New Hampshire act of June 19, 1805, allowing to tenants the value of improvements, &c., on recoveries against them, so far as it applies to past improvements, is unconstitutional, on the ground that it is retrospective. It gives validity to an act that was done before the statute, and by the passage of the law the party had a right to sustain an action which he did not possess before.

GILCHRIST, C. J. It appears from the case that the parties made a contract of marriage, lived together as husband and wife, and were reputed to be married.

The question is, whether these things are sufficient to constitute a marriage.

These events all happened before the passage of the Revised Statutes. Section 15 of chapter 147 of the Revised Statutes provides that no marriage, solemnized before any person professing to be a justice of the peace or minister of the gospel, shall be void on account of any want of jurisdiction in the justice or minister, or on account of any omission or informality in the publication of the intention of marriage, if the marriage is in other respects lawful, and consummated with the belief, on the part of either of the parties, that they have been lawfully married.

Section 11 of chapter 149 provides that any persons cohabiting and acknowledging each other as husband and wife, and generally reputed to be such, for the period of three years, and until the decease of one of them, shall be deemed after such decease to have been legally married.

All the facts constituting the alleged marriage in the present case happened before the passage of the Revised Statutes. If section 11 of chapter 149 can enable acts

which happened before its passage to constitute a valid marriage, it will give the effect of including all past as well as future cases. Evidence which did not prove a marriage before the passage of the act, and which was incompetent for that purpose, is made competent by the act, and facts which at the time they happened did not constitute a marriage, would, if the act should be applied to them, have a validity they did not originally possess. Marriage is a civil contract, and if it be not valid at the time it is to be attempted to be entered into, it cannot be made so by any subsequent law. The application of the statute would make a new rule for the exposition of the contract, and would apply this rule to the construction of past contracts. This would be unequivocally retrospective, and would come within the prohibition of the twenty-third article of the Bill of Rights. In the case of *The Society, &c.* v. *Wheeler*, 2 Gall. 139, Mr. Justice *Story* says : " Upon principle every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past, must be deemed retrospective, and this doctrine seems fully supported by authorities." In the case of *Dash* v. *Van Kleeck*, 7 Johns. 502, Mr. Chief Justice *Kent* says : " The very essence of a new law is a rule for future cases. * * * We are to presume, out of respect to the lawgiver, that the statute was not meant to operate retrospectively, and if we call to our attention the general sense of mankind on the subject of retrospective laws, it will afford us the best reason to conclude that the Legislature did not intend, in this case, to set so pernicious a precedent. * * * It is a principle in the English common law as ancient as the law itself, that a statute, even of its omnipotent Parliament, is not to have a retrospective effect."

The invalidity of retrospective laws results no more from the express prohibition in the Bill of Rights than from the

circumstance that from their nature and effect they are not within the legitimate exercise of legislative power. For though under the name of *ex post facto* laws, when made for the punishment of offences, they have long been severely reprobated, because more common in times of commotion, and because they endanger the character and person as well as the property; yet laws for the decision of civil causes, made after the facts upon which they operate " *ex jure post facto*," are alike retrospective, and rest on reasons alike fallacious. *Woodbury*, J., in *Merrill* v. *Sherbune*, 1 N. H. Rep. 199. A law operating retrospectively upon an existing cause of action, where no suit is pending, is as much to be deemed a retrospective law for the decision of a civil cause, and as much within the prohibition of the constitution, as a law establishing a new mode of decision for an existing action. *Dow* v. *Norris*, 4 N. H. Rep. 19.

We cannot, therefore, give the statute such a construction as would cause it to impart any validity to acts that happened before its passage, nor do we think that such was the intent of the Legislature. The words of the law do not necessarily or upon a reasonable construction of them extend to past cases. The act is prospective, applying to future cases that should subsequently arrive, and not to those which were past, and which must be determined upon the law as it existed when the acts were done. It does not include the present case.

The case of *Londonderry* v. *Chester* does not decide that a contract of marriage between the parties and subsequent cohabitation, accompanied by reputation that the parties were husband and wife, constitute a marriage. The remarks of Mr. Justice *Woodbury*, in that case, although relevant to the general question, were not called for by the particular matter to be decided by the court. It was not the question in that case whether mere cohabitation, reputation and acknowledgment that the parties were married, actually constituted a marriage. In that case, the marriage cere-

mony was performed by a person acting as a minister of the gospel, and the simple question was whether the clergyman, owing to the peculiar circumstances of the case, was an ordained minister, qualified to solemnize marriages, and the remarks of the learned judge do not indicate his opinion that the parties, by acts of cohabitation and reputation, or by an agreement between themselves, could call into existence the marriage relation. He says that the attestation of the contract by the magistrate or minister seems to be the essence of the ceremony. *Ib.* 280.

It is very evident that the facts found in this case are competent to be received and considered by the jury as evidence of marriage. In a case where these facts exist, it is a reasonable inference that the parties are married, and the jury may well enough believe that they were married. Whether they were or were not, is a matter of fact to be found by the jury. But we are asked to decide that these facts in themselves constituted a marriage. *Woodbury*, J. says in the case cited that the attestation of the contract " proves a guard against imposition or force, gives publicity to the contract, prevents illicit intercourse under the guise of matrimony, and by the record of the acting officer and of the town clerk, perpetuates evidence of a fact which is often so important in disputes concerning inheritances and the settlement of paupers."

If it be important to give publicity to the contract, to guard against deception, to provide that there shall be accessible evidence of the solemnization of the contract, there is a sufficient reason for the passage of the law. All civilized nations agree that these are weighty considerations, and in all such nations, even in Scotland, where it is a sufficient solemnization of the contract to acknowledge it before witnesses, some attestation is requisite. It is singular that the most important of all human contracts, on which the rights and duties of the whole community depend, requires less formality for its validity than a conveyance of an

acre of land, a policy of insurance, or the agreements which
the statute of frauds requires should be in writing.   It would
be stranger still if the law should be such as to offer a temp-
tation to illicit intercourse, where a contract lightly made
could be easily repudiated, should make no provision for
publicity, and offer no security against fraud or undue in-
fluence.   If it be once established that cohabitation and
reputation constitute a marriage, the former must precede
the latter.   It is the cohabitation that raises the presump-
tion and causes the reputation of matrimony.   What would
be easier than for parties to agree privately that they are
husband and wife, and after a cohabitation of a week or less,
to separate either from incompatibility of temper or from the
less worthy consideration that they have become tired of
each other, or galled by even this temporary bond?   Such
a transformation of a penal offence into matrimony, where
the alleged marriage might be dissolved, as it probably in
many cases would be, by the caprice of the parties, would
often follow, if, at the inception of the contract, nothing but
cohabitation were required.   And this temptation to illicit
intercourse should be guarded against, for the sake of good
morals, and has been so, as *Woodbury*, J. says, by our prac-
tice and the usage of most civilized nations, by requiring
some form of solemnization.

In many cases long continued cohabitation is *prima facie*
evidence of marriage.   *The State* v. *Kean*, 10 N. H. Rep.
347 ; *Pettengill* v. *Mac Gregor*, 12 N. H. Rep. 179.   And
this is so held because persons do not generally cohabit who
are not husband and wife.   Evidence of cohabitation has a
legal tendency to prove the existence of the marriage con-
tract, but is not conclusive evidence of it, and may be re-
butted by showing that the parties were not married.   The
admission of evidence of this kind, therefore, is not in con-
flict with the views we have stated above.

The instruction of the court was, in substance, that co-
habitation and acknowledgment by the parties that they

were man and wife, constituted a marriage. This instruction was erroneous, because these facts are evidence for the consideration of the jury, from which they are authorized to find, in the absence of evidence to the contrary, that the parties were married. In themselves, they do not constitute a marriage, but are only evidence of it. Still less correct was it to instruct the jury that if the parties made a contract of marriage between themselves, and lived together in accordance with it, that would constitute a marriage. We imagine that it never has been understood in this State that *cohabitation* without more, in pursuance of a contract of marriage, constitutes a marriage. Such a doctrine would be productive of the worst consequences to the peace and morals of society. Undoubtedly, where there is proof of a contract of marriage, and cohabitation in pursuance of it, the jury may believe that the parties were actually married, but the marriage is a fact to be found by the jury, and the other circumstances are competent evidence for their consideration, but they do not of themselves constitute a marriage, as must be the case if from such evidence the jury are bound to find that the parties are actually married.

As these instructions were erroneous, a new trial must be granted.

*Verdict set aside.*